UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ADRIAN FRANCIS WILLIAMS,

        Petitioner,

vs.                                   Case No. 3:19-cv-397-BJD-JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

## I.  STATUS

Petitioner, an inmate of the Florida penal system, is proceeding on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1). He challenges a state court (Duval County) conviction for burglary of a dwelling. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 8). Petitioner replied (Reply) (Doc. 22).[1]

_____

[1] Respondents filed an Appendix (Doc. 8). The Court hereinafter refers to the exhibits contained in the Appendix as "Ex." The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced. For the Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

Petitioner raises multiple grounds in the Petition claiming the ineffective assistance of trial counsel. Some of the grounds are duplicative or so closely related that the Court will address the claims jointly (1 & 9; 2, 3 & 7; 4, 5 &10; 6; 8), as did Respondents. Respondents calculate the Petition is timely filed pursuant to 28 U.S.C. § 2254(d). Response at 7-9.

## II.   EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017). To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

Of note, "[w]here a petitioner fails to allege sufficient facts to satisfy the prejudice prong of the <u>Strickland</u>[2] standard, it is unnecessary to hold an evidentiary hearing to resolve disputed facts relating to the allegedly deficient performance of trial counsel." <u>Barksdale v. Dunn</u>, No. 3:08-CV-327-WKW, 2018 WL 6731175, at *108 (M.D. Ala. Dec. 21, 2018) (not reported in F. Supp.) (citing <u>Bester v. Warden</u>, 836 F.3d 1331, 1339-40 (11th Cir. 2016)), <u>cert. denied</u>, 2021 WL 1520857 (U.S. April 19, 2021) (No. 20-6498).   Furthermore, if the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.   <u>Martin</u>, 949 F.3d at 670 (quotation and citation omitted).   Here, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).   Upon review, Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief; therefore, the Court finds Petitioner is not entitled to an evidentiary hearing.   <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).

---

2 <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

### III.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254). For issues previously decided by a state court on the merits, this Court must review the underlying state-court decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). In doing so, a federal district court must employ a very deferential framework. Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 141 S. Ct. 2469 (2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1364 (11th Cir. 2021) (citing 28 U.S.C. § 2254(d)(1)-(2)). The Eleventh Circuit instructs:

4

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413, 120 S. Ct. 1495.

<u>Lee</u>, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions where the state court's determinations are unreasonable, that is, if no fairminded jurist could agree with them.   <u>McKiver</u>, 991 F.3d at 1364.

This is a high hurdle, not easily surmounted.   If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'"   <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing

5

evidence to the contrary." <u>Sealey</u>, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   <u>See</u> <u>Hayes v. Sec'y, Fla. Dep't of Corr.</u>, No. 19-10856, 2021 WL 3747189, at *14 (11th Cir. Aug. 25, 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.   <u>Brannan v. GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between a pure question of fact from a mixed question of law and fact), <u>cert. denied</u>, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   <u>Dallas v. Warden</u>, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting <u>Brumfield v. Cain</u>, 576 U.S. 305, 314 (2015)), <u>petition for cert. filed</u>, (U.S. Feb. 27, 2021) (No. 20-7589).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   <u>Id</u>. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related

state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part <u>Strickland</u> standard." <u>Knight v. Fla. Dep't of Corr.</u>, 958 F.3d 1035, 1038 (11th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 2471 (2021).   Pursuant to this standard, "a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.   <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).   We need not address both prongs if a petitioner makes an insufficient showing on one prong.   <u>Id</u>. at 697, 104 S. Ct. 2052." <u>Fifield v. Sec'y, Dep't of Corr.</u>, 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam).

To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'" <u>Raheem v. GDCP Warden</u>, 995 F.3d 895, 908 (11th Cir. 2021) (quoting <u>Strickland</u>, 466 U.S. at 687).   Additionally,

> because "[t]he standards created by <u>Strickland</u> and §
> 2254(d) are both 'highly deferential,' . . . when the two
> apply in tandem, review is 'doubly' so.   <u>Harrington [v.
> Richter</u>, 562 U.S. 86, 105 (2011)] (internal citations
> and quotation omitted).   Thus, under § 2254(d), "the
> question is not whether counsel's actions were
> reasonable.   The question is whether there is any
> reasonable    argument    that    counsel    satisfied
> <u>Strickland</u>'s deferential standard."   <u>Id</u>.

<u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020), <u>cert.</u>

<u>denied</u>, 141 S. Ct. 1721 (2021).

## V.   GROUNDS ONE & NINE

In his first ground for relief, Petitioner raises a claim of ineffective

assistance of counsel based on counsel stipulating to a "known" rolled-ink

fingerprint card and a claim of deprivation of due process of law based on

Petitioner's contention that there was insufficient evidence to establish a

match between the latent print lifted from a mug and the rolled-ink

fingerprint.   Petition at 5-6.   He raised a comparable claim in ground one of

his motions for postconviction relief.   Ex. C1 at 162-63, 232-33.

In his ninth ground for relief, Petitioner repeats his claim that his trial

counsel was ineffective for stipulating that the fingerprints on the "known"

fingerprint card belonged to Petitioner.   Petition at 21.   Petitioner asserts no

stipulation should have been entered and Thomas Howell, the state's

fingerprint expert, should have been called to testify at trial to explain why

Petitioner was a match.  Id.  Additionally, Petitioner complains that three fraudulent fingerprint cards were admitted into evidence in the state's attempt to bolster its case after "someone played with the fingerprints."  Id.  Finally, Petitioner alleges Ms. Beasley's name was forged on the latent fingerprint documents.  Id. at 22.  Petitioner exhausted ground nine of the Petition by raising it in ground ten of the amended Rule 3.850 motion.   Ex. C1 at 182-85.

Applying the Strickland standard, the circuit court denied these grounds.  Id. at 285-89; 299-300.   Petitioner appealed the denial of post-conviction relief, and the First District Court of Appeal (1st DCA) affirmed. Ex. C2; Ex. C4.

Some procedural history will be provided to provide context for these grounds.  In another trial, which took place on February 5, 2009, Petitioner was tried for the burglary of a dwelling of victim Sharlinde Vinson.   Ex. B11. A fingerprint was lifted from a cookie jar or other vessel, and Thomas E. Howell, an employee of the Jacksonville Sheriff's Office (JSO) and latent fingerprint examiner, attested he took the rolled-ink prints of Petitioner.  Id. at 316-17.  In that case, Howell testified that the latent print of value, when compared to the rolled-ink print of Petitioner, was a match.  Id. at 317-18.

In the Affidavit for Arrest Warrant in the case concerning the burglary victim Hal Garmon, it states, in pertinent part:

9

> The victim reported a burglary on 08-30-07.  Prints
> were lifted at the scene and were identified to the
> defendant.  The victim stated he does not know the
> defendant and has not had any work done to his
> apartment as he lives by himself.   A print was lifted
> from a coffee mug, in the master bedroom, that was
> originally full of quarters[.]

Ex. B1 at 2.

In a pretrial proceeding conducted April 3, 2008, Carr Smith, an assistant public defender who was representing Petitioner at the time, stated he had been authorized to hire a defense fingerprint expert.  Ex. C1 at 357. Michelle Royal, a latent print examiner employed by JSO, completed a Latent Print Unit Examination Request Form, and identified one latent print from a coffee mug to Petitioner.  Ex. B1 at 63.  She also testified at trial.  Ex. B2 at 159.

Ms. Royal testified she obtained the inked print card bearing the name Adrian Williams from Mr. Howell, who works in the same JSO office.  Id. at 156.  When Scott Leemis, Petitioner's retained trial attorney, was asked if he had any objection to the inked print card, he responded, "[n]o objection.  We previously examined it and stipulated."  Id. at 157.

After the state rested, the following discussion took place.  The prosecutor told the court that the defense was agreeing that the known print card used by Officer Royal with the name Adrian Williams are the known

prints of Petitioner.   Ex. B2 at 181.   The prosecutor referred to state's exhibit 2.   Id. at 182.   He told the court the parties had agreed to the prints so they would not have to call Tom Howell.   Id. at 183.   The defense announced it was willing to stipulate that the fingerprints in Exhibit 2 are Petitioner's.   Id. at 184.   Thereafter, the court read the stipulation to the jury: "Stipulation as to Exhibit 2, known print card:   The State of Florida and the defendant are stipulating that Exhibit No. 2 contains the known prints of the defendant in this case."   Id. at 195.

The record contains the signed Stipulation as to Exhibit 2 – Known Print Card, which states that the state and the defendant are stipulating that Exhibit #2 contains the known prints of Petitioner.   Ex. B1 at 28.   The record shows the stipulation was executed on April 14, 2009 and signed by Petitioner, Mr. Leemis, and the prosecutor.   Id.

Upon review, Mr. Leemis did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial by stipulating to the known ink-rolled fingerprints.[3]   Petitioner has failed to

---

3 The Fourteenth Amendment provides any state shall not deprive any person of life, liberty, or property, without due process of law.   U.S. Const. amend. 14.   To the extent a Fourteenth Amendment claim was raised and addressed, the adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.   Therefore, Petitioner is not entitled to relief on his claim of deprivation under the Fourteenth Amendment because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable

demonstrate either a Sixth or Fourteenth Amendment violation.    An explanation follows.

Based on the record, Mr. Howell, one of the latent print examiners working for JSO, had previously attested, in a different trial for a different offense, that he rolled Petitioner's prints and placed them on the card.   In light of this record, it is quite apparent defense counsel was aware of that fact and decided to stipulate so that Mr. Howell would not repeat the testimony before the jury and possibly bolster the state's case or suggest, even unintentionally, Petitioner had other criminal history.   Mr. Leemis acted well within the bounds of professional judgment in having the defense stipulate to the known prints.

Petitioner suggests Mr. Howell should have been called to testify to explain why Petitioner was a match.   Petitioner, however, does not explain why the testimony of Ms. Royal did not already serve that purpose.   She too is a latent print examiner employed by JSO.   She obtained the rolled prints from Mr. Howell.   Ms. Royal did the comparison of the known prints to the

---

application of clearly established federal law, and was not based on an unreasonable determination of the facts based on the evidence presented in the state court proceedings. Under these circumstances, AEDPA deference is due, or alternatively, Petitioner is not entitled to federal habeas relief on a claim raised pursuant to the Fourteenth Amendment.

latent print, not Mr. Howell, and Ms. Royal testified it was a match.   She

explained the process on cross-examination:

> When the known print and the unknown print are placed side by side, using a latent print magnifier and ridge counters I find the point or position in one impression and I go to that same general area in the other impression.   I then find characteristics that are similar and in the same relative position.   And at that point I go from that same characteristic in each impression, counting the ridges in between to the very next characteristic making certain that I end up on the same type of characteristic in each impression via the ending ridge, a bifurcation, or a dot and making certain that the ridges that I count in between are consistent in both impressions.   I perform that process until I'm comfortable that I found a sufficient number of individual ridge characteristics present in the one impression and also in the same relative position and area in the other impression.   At that point I'm able to make a decision and come to a conclusion that the two impressions were made by the same finger or that they were not made by the same finger.

Ex. B2 at 162-63.

Ms. Royal attested that when she compared the known prints of

Petitioner with one of the latent prints that was provided to her, she concluded

there was one latent value lifted from the mug and placed on a card that was

identified to the left thumbprint of Petitioner.   Id. at 157, 171.   In short, she

completed and submitted a report stating that one latent print from the coffee

mug is identified to Petitioner.   Ex. B1 at 63.

As for Petitioner's assertion that there were three fraudulent fingerprint cards, that claim is completely unsupported and has no merit. Detective Donna Beasley testified she lifted prints and placed them on four fingerprint cards. Ex. B2 at 134-35. She explained the prints came from a coffee mug from the burglary. Id. at 135. Ms. Royal, an expert in fingerprint analysis, attested that three of the cards were determined to be of no value. Id. at 159. She stated there were four latent lift cards examined, but only one was identified and determined to be of value. Id. at 160-61. There is nothing in the record supporting Petitioner's contention that "someone played with the fingerprints." This vague, conclusory, and unsupported contention is insufficient to support a claim of ineffective assistance of counsel or a claim of denial of due process of law.

The circuit court, applying the applicable Strickland standard, denied post-conviction relief, finding:

> As to the merits of the claim, the Court finds Defendant is not entitled to relief because he is unable to demonstrate prejudice as a result of counsel's stipulation that the card containing Defendant's known prints were the same prints previously rolled by Howell. Significantly, Defendant does not allege that the prints on the known print card are not his own. The record shows that counsel hired a fingerprint expert, the known print card was examined, and counsel stipulated to its admission without the necessity of calling Howell because there

> was nothing objectionable about it.    The Court
> therefore finds that even if counsel had objected to the
> admission of the known print card and had required
> the State to call Howell at trial to lay the foundation
> for admission, the print card containing Defendant's
> known prints still would have been admitted and still
> would have matched the print found on the mug at the
> scene.    Because Defendant is unable to meet the
> prejudice prong of the <u>Strickland</u> test, the Court finds
> he is not entitled to relief as to Ground One.

Ex. C1 at 288-29 (citation omitted).

The court also found, "the record refutes Defendant's claim that counsel

failed to acquire a fingerprint expert to examine the evidence in this case[.]"

<u>Id</u>. at 298-99.   Additionally, the court found Petitioner's claim further refuted

by the record:

> Although Howell rolled the prints on Defendant's
> known print card, the record shows that it was Royal,
> not Howell, who performed the comparison between
> the known prints and the latent prints and made the
> determination that one of the latent prints belonged to
> Defendant.   Therefore even if Howell had testified at
> trial, he would have been unable to testify "how he
> used the point scale to come up with the identification
> method to positively identify how he came up with the
> match from the alleged crime scene to the finger
> print[.]"

<u>Id</u>. at 299-300 (citation omitted).   To the extent Petitioner is alleging that

someone forged Donna Beasley's name on the cards, the court found this claim

refuted by the record in that Ms. Beasley attested the cards were her

fingerprint cards, exhibiting her initials in her handwriting.   Id. at 300; Ex. B2 at 134-35.

After making its findings, the circuit court denied Petitioner's contentions.   The 1st DCA affirmed the decision of the circuit court.   Ex. C4.

In denying post-conviction relief, the trial court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected these claims based on Strickland.   Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry.   Furthermore, the 1st DCA affirmed.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   The Court finds the state court's adjudication of these claims is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.

As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair

16

and his counsel ineffective.   Thus, Petitioner has failed to demonstrate a Sixth or Fourteenth Amendment violation under the United States Constitution. The Court concludes Petitioner is not entitled to habeas relief on grounds one and nine of the Petition.

## VI.   GROUNDS TWO, THREE & SEVEN

Throughout the Petition, Petitioner complains that the police failed to take, preserve, and introduce at trial photographs and physical evidence from the crime scene.   In grounds two, three, and seven, Petitioner claims his counsel was ineffective for failure to challenge this failure, particularly with regard to the coffee mug from which the latent left thumbprint was lifted. Petition at 8-9, 10-11, 19.   In support, he argues that counsel's failure to request a Richardson[4] hearing, to allege a Brady[5] violation, and to raise a confrontation clause claim resulted in a miscarriage of justice.

Of import, ground two is procedurally defaulted.   Response at 12-15, 40. In ground two of his postconviction motions, Petitioner raised the claim that his counsel was ineffective in failing to request a Richardson hearing contending the object was never placed into evidence and no photographs were

---

4  Richardson v. State, 246 So. 2d 771 (Fla. 1971) (a Richardson hearing is one that addresses discovery and noncompliance with discovery requests).

5  Brady v. Maryland, 373 U.S. 83 (1963).

taken of the crime scene.   Ex. C1 at 163-64, 233-34.   Notably, Petitioner was granted leave to amend his Rule 3.850 motion after the circuit court found Petitioner's claim insufficiently pled.   Id. at 214-16.   Thus, Petitioner was given an opportunity to cure the deficiencies of his post-conviction motion.

In its Order Denying Defendant's Amended Motion for Postconviction Relief, and [Second] Amended Motion for Postconviction Relief, the circuit court held the claim remains legally insufficient, finding Petitioner failed to rectify the deficiencies of the post-conviction motion.   Id. at 290.   Petitioner was given an opportunity to amend the motion, and under state law, no further opportunity need be provided.   Id.   As such, the court found the previous dismissal of the claim constitutes the final disposition of ground two.   Id. The 1st DCA affirmed.   Ex. C4.

As such, Respondents contend ground two is unexhausted and procedurally defaulted.   Response at 12-15.   The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state

court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[6] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[7] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies.   <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 908 n.9 (11th

---

6  <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

7  <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

Cir. 2009) (quoting <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert. denied</u>, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." <u>Martinez</u>, 566 U.S. at 10 (citing <u>Coleman</u>, 501 U.S. at 750). To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir.), <u>cert. denied</u>, 528 U.S. 934 (1999). If cause is established, a petitioner must demonstrate prejudice. To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." <u>Owen</u>, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent. <u>Kuenzel v. Comm'r, Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting <u>Schlup</u>, 513 U.S. at 324), <u>cert. denied</u>, 569 U.S. 1004 (2013).

20

The record shows that, although given the opportunity, Petitioner failed to cure the insufficiencies of the claim.   In short, the state court found the claim deficiently pled.   The 1st DCA summarily affirmed.   Petitioner cannot return to the state court to exhaust this claim; therefore, he has procedurally defaulted this ground for relief.   He has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach merits of ground two.

In the alternative, the Court finds Petitioner is not entitled to habeas relief on ground two.   In a <u>Richardson</u> hearing, the court determines whether a discovery violation resulted in harm or prejudice to the defendant, inquiring into the surrounding circumstances such as whether the violation of a discovery rule was inadvertent or willful, whether the violation was trivial or substantial, and what effect the violation had upon the defendant's ability to prepare for trial.   <u>Richardson</u>, 246 So. 2d at 775.   Here, there was no discovery violation.   No photographs were taken at the scene and the coffee mug was not removed and kept.   At most, the police lifted fingerprints from the scene and from the coffee mug.   Therefore, a request for a <u>Richardson</u> hearing was uncalled for because the state was not in possession of photographs or the coffee mug.   Ex. B2 at 138-40, 144-45.

21

As far as the effectiveness of counsel, Mr. Leemis effectively cross-examined Detective Beasley concerning her failure to take pictures and take physical custody of the mug.   Through cross-examination, Mr. Leemis demonstrated the vagueness of the detective's recollection of the scene and emphasized her inability to review pictures to refresh her memory because she failed to take any pictures of the burglary scene.   Under these circumstances, counsel did not perform deficiently.   Therefore, Petitioner is not entitled to habeas relief on ground two of the Petition.

Petitioner raises a similar claim in ground three of the Petition. Petition at 10-11.   He raised a comparable claim in his state post-conviction motions.   Ex. C1 at 164-65, 234-36.   The circuit court found the claim presented in ground three was adequately fleshed out as it specified the object as being the coffee mug and Petitioner adequately alleged that had counsel drawn the trial court's attention to the fact that the court should conduct a Richardson hearing, the outcome of his trial likely would have been different. Id. at 290.   Finding the claim legally sufficient or adequately pled, the court addressed the claim on its merits and denied relief, finding Petitioner was unable to demonstrate prejudice because the state never had the mug or crime scene photos in its possession; therefore, "a Richardson hearing would not have been appropriate," and any request for a hearing would have been denied.   Id.

22

at 291.   Applying the <u>Strickland</u> standard, the Court found Petitioner failed to satisfy both prongs.   <u>Id</u>.   The 1st DCA affirmed.   Ex. C4.

Based on the above, Petitioner cannot satisfy the "contrary to" test of AEDPA review as the state court denied the claim applying the <u>Strickland</u> standard and the appellate court affirmed this decision.   Thus, the only questions that remain are whether the court unreasonably applied that principle to the facts of the case or premised its adjudication of the claim on an unreasonable determination of the facts.   In this instance, this Court is not convinced of an unreasonable application or an unreasonable determination of the facts.

Indeed, Petitioner has failed to show that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.   The state court was objectively reasonable in its inquiry and the 1st DCA affirmed the decision. The 1st DCA's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   Therefore, ground three is due to be denied.

In grounds three and seven of the Petition, Petitioner claims his counsel was deficient for failure to file a motion claiming a <u>Brady</u> violation.   Petition at 11, 19.   He asserts he could not have had a fair trial without the coffee mug. <u>Id</u>. at 19.

To successfully sustain a <u>Brady</u> claim, a defendant must show favorable evidence – either exculpatory or impeaching, was willfully or inadvertently suppressed by the state, and the evidence was material, resulting in prejudice to the defendant.   Petitioner has not shown that either the coffee mug or photographs of the scene would have been favorable to the defense.   Also, he has not shown that any evidence was willfully or inadvertently suppressed by the state.   As noted by Detective Beasley, JSO does not routinely take photographs of burglary scenes and she elected not to take the coffee mug because it belonged to the victim and was not brought to the scene by the burglar.   Ex. B2 at 138-39, 144.   She did, however, lift the fingerprints from the coffee mug and preserved those.   <u>Id</u>. at 134-35.

As noted by the circuit court, "failure to take an item into custody to preserve it as evidence does not constitute a <u>Brady</u> violation."[8]   Ex. C1 at 298. Thus, the court concluded that even if defense counsel had alleged a <u>Brady</u> violation, it would have been an unsuccessful contention.   Ex. C1 at 298.   The

---

8  At trial, the detective explained that she did not routinely photograph burglary scenes and she decided to lift the fingerprints off of the mug but not take possession of the victim's coffee mug.   Petitioner failed to show egregious behavior or bad faith on the part of the police and did not convince the state court that he was entitled to post-conviction relief based on his vague accusations and unsupported contentions concerning police and state conduct.   Ex. C1 at 297-98.

court found Petitioner failed to satisfy the performance and prejudice prongs of <u>Strickland</u>.   Ex. C1 at 298.

Under the circumstances presented, a defense attorney would not have prevailed on a motion claiming a <u>Brady</u> violation.   As a defense attorney need not make a meritless motion that would not have obtained relief, <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1056 (11th Cir. 2019), Petitioner cannot satisfy the performance prong of <u>Strickland</u>.   Ultimately, Petitioner has failed to satisfy the prejudice prong as well; "[t]here is no reasonable probability that the outcome of Defendant's trial would have been different if counsel had raised a <u>Brady</u> claim."   Ex. C1 at 298.

The 1st DCA affirmed the decision of the trial court applying the <u>Strickland</u> standard of review and denying Petitioner's claim of ineffective assistance of counsel.   Ex. C4.   The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Applying the look-through presumption set forth in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Grounds three and seven are due to be denied as the state court's adjudication of the claims is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   As

such, the Court finds Petitioner is not entitled to habeas relief on these grounds.

To the extent Petitioner is attempting to raise a claim of ineffective assistance of counsel for failure to raise a confrontation clause claim, Petition at 19, the claim is due to be denied.   Respondents contend the claim is unexhausted and procedurally defaulted.   Response at 20-21.   Upon review, however, Petitioner referenced confrontation clause rights in ground seven of his post-conviction motions claiming ineffective assistance of counsel.   Ex. C1 at 176-77; 246-47.   The circuit court, applying the Strickland standard of review, denied the claim of ineffective assistance of counsel.   The 1st DCA affirmed.   Ex. C4.

The record shows Petitioner was able to confront the evidence the police collected, the lifted prints from the coffee mug.   The police elected not to photograph the scene or take the coffee mug from the victim.   Petitioner's counsel sought and obtained a latent print expert.   Defense counsel subjected the state's expert to extensive cross-examination.   Upon consideration of the trial record, Petitioner's counsel did not perform deficiently in this regard. Therefore, Petitioner is not entitled to habeas relief on this sub-claim of ground seven.

## VII.   GROUNDS FOUR, FIVE & TEN

In ground four, Petitioner claims his counsel was ineffective for failure to preserve a <u>Giglio</u>[9] violation related to the fingerprint evidence.   Petition at 13.   He alleges, Ms. Royal, the expert fingerprint examiner, used three extra latent print cards and had them admitted into evidence as Petitioner's fingerprints in order to help the state obtain an illegal conviction.   <u>Id</u>. at 16. Petitioner claimed Ms. Royal also failed to explain the fingerprint identification points to establish the left thumb print was a match to Petitioner.   <u>Id</u>.   Petitioner contends his counsel should have included in his argument supporting the defense's motion for judgment of acquittal a contention that Ms. Royal's fraudulently submitted extra latent print cards as Petitioner's prints although she knew the prints were not Petitioner's prints. <u>Id</u>.   In addition, Petitioner complains that the coffee mug was never entered into evidence and there was insufficient evidence to support the expert's opinion that the latent print lifted from the mug matched Petitioner's thumbprint.   <u>Id</u>.

In his fifth ground, Petitioner claims the ineffective assistance of counsel for failure to preserve the issue of prosecutorial misconduct.   <u>Id</u>. at 17.

---

9 <u>Giglio v. United States</u>, 405 U.S. 150 (1972) (to establish a <u>Giglio</u> violation, a defendant must demonstrate the testimony was false, the prosecutor knew the testimony was false, and the statement was material).

Petitioner again complains that the coffee mug was not retrieved and placed into evidence.   Id.   In ground ten, Petitioner claims his counsel was ineffective for allowing the prosecutor to engage in misconduct in failing to admit the coffee mug and photographs of the crime scene into evidence.   Id. at 23.

As to grounds four, five, and ten of the Petition, the record shows Petitioner raised similar grounds in his state court post-conviction motions (ground four of the amended motion and second amended motion, ground eleven of the amended motion, and ground ten of the second amended motion). Ex. C1 at 166-68, 236-38, 185-97, 255-67.   He appealed.   Ex. C4.   Thus, he exhausted these claims in the state courts.

Respondents submit that Petitioner's contentions are based on faulty premises, completely unsupported by the record, those being (1) the state was obliged to preserve and introduce the coffee mug; and (2) Ms. Royal misrepresented the source of the three extra latent print cards, stating they were from Petitioner in order to obtain an illegal conviction.   As noted previously, the state was not obliged to preserve and introduce the coffee mug. Also of import, Ms. Royal never said the three extra latent print cards were from Petitioner.   She simply stated they were of no value.   Thus, the premise

of Petitioner's claim is both misguided and unsupported.   It follows that it is without merit.

Furthermore, the latent print form is signed by Ms. Royal, not Detective Beasley.   Ex. B1 at 63.   Ms. Beasley's name appears as the detective on the case, not as a latent print examiner.   Id. at 49-59.   Ms. Royal described that, through her comparison, one latent print from a coffee mug was identified to Petitioner.   Id. at 63.   She attested to the same at trial.

In denying ground four of the postconviction motions, the court first recognized that Petitioner was raising a claim of ineffective assistance of counsel for failure to preserve a Giglio violation based on the failure to preserve evidence: the coffee mug.   Ex. C1 at 291.   The circuit court in rejecting this claim noted that this would not have been an appropriate subject for a Giglio hearing, and as such, any request for such a hearing would have been denied. Ex. C1 at 292.   Therefore, counsel could not have been ineffective for failure to seek a Giglio hearing.   Ex. C1 at 292.   The court denied this claim finding Petitioner failed to satisfy either the performance or prejudice prong of Strickland.

With regard to Petitioner's remaining contentions raised in ground four of his motions, the court opined:

29

Additionally and alternatively, the Court finds the record refutes this factual allegation. Crime scene detective Beasley testified that she lifted four latent prints form the coffee mug at the scene. Latent print examiner Royal testified that she compared the four latent prints to Defendant's known prints and was able to positively identify one of them as Defendant's. The other three prints were determined to be of no value. Royal could not say one way or the other whether the three non-value prints belonged to Defendant. The Court has thoroughly examined the entire trial transcript and finds that at no point did Royal or any other witness attempt to admit latent fingerprints that had been determined not to belong to Defendant.

In sum, the Court finds that all of the claims in Ground Four are either procedurally barred, refuted by the record, or without merit.

Ex. C1 at 293-94 (citations omitted).

The circuit court succinctly denied ground eleven of the amended Rule 3.850 motion. In doing so, the court rejected Petitioner's contention that his counsel performed deficiently by failing to object to what Petitioner described as "prosecutorial misconduct" in the state failing to take pictures of the crime scene and failing to take the coffee mug into evidence. Id. at 300-301. Petitioner avers counsel should have objected to these omissions, and he submits that had counsel done so, there is a reasonable probability that the outcome of the proceeding would have been different.

The circuit court succinctly rejected this claim of ineffective assistance of counsel:

> The fact that no photos were taken of the crime scene, and that crime scene detectives did not seize the mug, is irrelevant to the admissibility of testimony about the scene and the mug.   As such, testimony about the scene and the mug were properly admitted, and there was no good-faith basis for defense counsel to object to that testimony.   The Court therefore finds that counsel was not ineffective in failing to raise such a claim.   See, e.g., <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990) (Defendant counsel cannot be deemed ineffective for failing to file a motion that has no merit).

Ex. C1 at 301.   Of import, the state court relied upon guidance from the Eleventh Circuit in making its determination:   <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit.").

Throughout the Petition, Petitioner repeatedly complains that his counsel was ineffective for stipulating that the fingerprints on the known print card belonged to Petitioner.   He contends Thomas Howell, the person who rolled the prints, should have been called at trial to explain the point scale of fingerprint examination and to reveal how he matched the rolled print to the latent print.

31

The court summarily rejected Petitioner's contention as refuted by the record and wholly unsupported.   In denying ground ten of the amended Rule 3.850 motion, the court found:

> Although Howell rolled the prints on Defendant's known print card, the record shows that it was Royal, not Howell, who performed the comparison between the known prints and the latent prints and made the determination that one of the latent prints belonged to Defendant.   Therefore, even if Howell had testified at trial, he would have been unable to testify "how he used the point scale to come up with the identification method to positively identify how he came up with the match from the alleged crime scene to the finger print[.]"

Id. at 299-300 (citations omitted).

Also, to the extent Petitioner is claiming that Detective Beasley's name was forged on a latent lift card, that too is refuted by the trial record.   Id. at 300; Ex. B2 at 134-35.   As such, the court denied Petitioner's claim of ineffective assistance of counsel for any failure to pursue this issue.

For a Giglio claim, a defendant carries the burden of establishing a prima facie case based upon a legally valid claim.   Taylor v. State, 62 So. 3d 1101, 1115 (Fla. 2011) (per curiam) (citation omitted).   Upon thorough review, Petitioner failed to demonstrate the testimony of the state's witnesses was false and the prosecutor knew the testimony was false.   Petitioner's claim of ineffective assistance of counsel is due to be denied as Petitioner has failed to

demonstrate that the prosecutor knowingly used perjured testimony and that the alleged perjured testimony was likely to have affected the outcome of the trial.   See Geralds v. Att'y Gen., Fla., 855 F. App'x 576 (11th Cir. 2021) (per curiam) ("Due process bars a prosecutor from knowingly presenting false evidence at trial and from failing to correct false testimony, even when unsolicited.").

Petitioner appealed the denial of his post-conviction motions, and the 1st DCA affirmed.   Ex. C4.   The record supports the state courts' conclusions, showing counsel's performance was well within the broad range of reasonable assistance under prevailing professional norms.   Strickland.   Indeed, counsel's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair proceeding.

Not only is the Court not convinced that, under these circumstances, counsel's performance fell outside the range of reasonably professional assistance, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had made the objections or motions as Petitioner suggested he should, counsel's objections and/or motions would have been sustained or granted, as evinced by the decision of the circuit court finding Petitioner's contentions meritless and the 1st DCA's affirmance of the circuit court's decision.   Again, counsel did not perform deficiently by

failing to raise meritless objections or by failing to file irrational or unsupported motions. See Hollis v. United States, 958 F.3d 1120, 1124 (11th Cir. 2020) (per curiam) (failure to raise meritless objection not constitutionally ineffective).

It is quite apparent the state court properly applied the two-pronged Strickland standard of review. Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland. Furthermore, Petitioner has failed to show that the state court unreasonably applied Strickland or unreasonable determined the facts. Indeed, the state court was objectively reasonable in its inquiry and the 1st DCA affirmed the decision. The 1st DCA's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts. Therefore, grounds four, five, and ten of the Petition are due to be denied.

## VIII.   GROUND SIX

Petitioner, in ground six, claims his counsel was ineffective for failure to file a motion in limine to exclude all testimony linking Petitioner to the coffee mug. Petition at 18. He complains that the coffee mug was never placed in evidence and it is questionable whether the object ever existed as it was not

provided to the defense for examination and was not introduced at trial, depriving Petitioner of due process of law.   Id.

The circuit court found this claim procedurally barred, or, alternatively, without merit.   Ex. C1 at 296-97.   Petitioner raised the claim in his second amended rule 3.850 motion.   Id. at 241-43.   In denying relief, the court found Petitioner could not now complain about the actions of his counsel because Petitioner was bound by his answers given during the trial court's colloquy, including that Petitioner understood his attorney would not be filing a motion to suppress any of the evidence in the case.   Id. at 296.

The record demonstrates, at the inception of the trial, the court required Petitioner be sworn.   Ex. B2 at 7.   The following colloquy took place:

> THE COURT:   All right.   Mr. Leemis, have you got a defense witness list?
>
> MR LEEMIS:   Only potentially Mr. Williams.
>
> THE COURT:   Mr. Williams, do you understand that you would be the only witness possibly called to the trial of this matter?
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   Are there other witnesses that you've asked your attorney to locate, interview, list or call as witnesses in the trial?
>
> THE DEFENDANT:   No, sir.

THE COURT:   Does the state intend to introduce any evidence or statements taken from the defendant?

MR. WOOLSEY:   No, Your Honor.

THE COURT:   **There are no motions to suppress that are going to be filed, Mr. Leemis, that haven't been heard already?**

MR. LEEMIS:   **No, Your Honor.**

THE COURT:   **All right.   Do you understand, Mr. Williams, there won't be any motions to suppress filed in this case?**

MR. LEEMIS:   Sir?

THE COURT:   **Do you understand there won't be any motions to suppress evidence filed in this case?**

THE DEFENDANT:   **Oh, yes, sir.**

<u>Id</u>. at 7-8 (emphasis added).

As Petitioner did not express any objection, the circuit court concluded Petitioner's current complaints that his counsel failed to seek to suppress the testimony about the coffee mug would not be heard as Petitioner is bound by his sworn responses.   Ex. C1 at 296.   As such, Petitioner is barred from complaining about that which he already waived in open court.   Petitioner has failed to show cause and prejudice or that a failure to address the claim on its

merits would result in a fundamental miscarriage of justice. Therefore, ground six is barred from federal habeas review.

In the alternative, the Court will give deference to the state court's conclusion that Petitioner did not meet the two-pronged <u>Strickland</u> standard requiring he show deficient performance and prejudice. <u>Id</u>. at 297. The court employed the correct standard, asking whether counsel performed deficiently and whether Petitioner had met the prejudice prong of the <u>Strickland</u> test. <u>Id</u>. The court concluded that even assuming counsel had filed a motion to suppress the testimony about the mug, there was no reasonable probability that the outcome of the trial would have been different. <u>Id</u>. The court found that any failure of the police to take the mug into custody or to take pictures of the scene went "only to the weight the jury might give to the testimony, not the admissibility of the testimony." <u>Id</u>. As a consequence, even if counsel had moved to suppress the testimony, the motion would have been unsuccessful. <u>Id</u>.

Counsel will not be deemed ineffective for failure to file a meritless motion. Therefore, Petitioner cannot satisfy the performance prong of <u>Strickland</u>. As such, the claim of ineffective assistance of counsel is without merit.

Under these circumstances, even if defense counsel had performed as Petitioner suggests he should have performed, it would have made no difference in the outcome of the case because a motion in limine or a motion to suppress would not have been granted. Therefore, this suggested action would not have changed the outcome of the case. As such, Petitioner cannot satisfy the prejudice prong of Strickland.

The Court is not convinced that counsel's performance fell outside the range of reasonably professional assistance. More importantly, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had taken the actions suggested by Petitioner, motions would have been granted, as evinced by the decision of the circuit court and the 1st DCA affirming the denial of post-conviction relief.

Here, Petitioner has failed to satisfy either the performance or prejudice prongs to satisfy a claim of ineffective assistance of counsel pursuant to the Sixth Amendment to the United States Constitution. The state court's determination is consistent with federal precedent. Although unexplained, the 1st DCA's decision is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. In this regard, the state court's adjudication of the claim is not contrary to or

an unreasonable application of <u>Strickland</u> and its progeny or based on an
unreasonable determination of the facts.   The Court finds ground six is due to
be denied and Petitioner has no entitlement to habeas relief.

## IX.   GROUND EIGHT

In ground eight, Petitioner claims his counsel was ineffective for failure
to acquire an independent fingerprint expert to examine the evidence and
counter the state's expert.   Petition at 20.   Petitioner exhausted this claim by
presenting it in his second amended Rule 3.850 motion and appealing the
denial of the motion.   Ex. C1 at 251-55.   The circuit court denied this ground
finding the record belies the allegation.   <u>Id</u>. at 298-99.   The 1st DCA affirmed.
Ex. C4.

The record demonstrates the defense was authorized to hire a defense
fingerprint expert.   Ex. C1 at 357.   Defense counsel examined the known
print card, stipulated to it, and announced no objection to it.   <u>Id</u>. at 331.   The
prosecutor and defense counsel discussed the matter and made the
determination to stipulate to the known print card.   <u>Id</u>. at 337.   Thereafter,
the court read the agreed upon stipulation to the jury.   <u>Id</u>. at 341.

The circuit court, in denying postconviction relief, said: "[b]ecause the
record refutes Defendant's claim that counsel failed to acquire a fingerprint
expert to examine the evidence in this case, the Court finds that Defendant is

not entitled to relief[.]" Id. at 298-99.   The state court's factual determination is presumed correct, absent clear and convincing evidence to the contrary. Hayes, 2021 WL 3747189, at *14 (Newsome, Circuit Judge, concurring).   This Court may not supersede the state court's determination just because reasonable minds may disagree about the finding.   Furthermore, this Court must accord the state court's factual determination substantial deference.

The Court presumes the factual determination of the state court is correct.   The Court finds the presumption of correctness has not been overcome by Petitioner's summary contention that counsel failed to acquire a fingerprint expert to examine the evidence.

The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Applying the look-through presumption set forth in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   Thus, ground eight is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   As such, the Court finds Petitioner is not entitled to habeas relief on ground eight.

Accordingly, it is now

40

**ORDERED AND ADJUDGED:**

1.      The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.      This action is **DISMISSED WITH PREJUDICE**.

3.      The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**. [10]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of September, 2021.

_____

BRIAN J. DAVIS
United States District Judge

---

[10]  This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

sa 8/27
c:
Adrian Francis Williams
Counsel of Record